McIlvaine, J.
 

 1.
 
 Did the Court of Common Pleas err in-overruling the demurrer to the petition ?
 

 The petition counted upon a written contract, of which' the following is a copy:
 

 “ This is to certify, that the Dayton Insurance Company,, of Dayton, Ohio, have received from Joseph L. Kelly, by their agent, Charles E. Gunekle, the sum of sixty dollars,, for insuring according to the tenor and conditions of their printed policies, issued from their office, in Dayton, Ohio,, from this date, 12 o’clock at noon, until March 5, 1868, at 12 o’clock at noon, $5,000 in the following property : Hogs and products of hogs, contained in his frame pork and' slaughter-house, situate in Campelltown, Preble county,. Ohio.
 

 “ This receipt and agreement is binding on the Dayton Insurance Company, of Dayton, Ohio, until a regular policy shall be issued from the office of said company;
 
 or should the risk not be accepted, and the above sum of money refunded to the applicant,,then this receipt is void, and of no-effect.
 

 “ Signed by the secretary of the company.
 

 “ J. R. YOUNG, Secretary.-
 

 
 *357
 
 “ This is of no effect until countersigned by the agent, •’Charles E. Gunekel. Dated at Middletown, Ohio, this 5th ■day of December, 1867.
 

 [Signed,] “CHARLES E. GUNCKEL, Agent.”
 

 The objections urged against the petition are, that it did not set out the conditions contained in tbe “printed policies;” that it did not state whether or not the risk was •-accepted, or whether a regular policy had been issued, and ■that it contained no averment of the performance of conditions on the part of tbe plaintiff’ below.
 

 If it were necessary to determine whether the facts •stated in the petition are sufficient to constitute a cause of •action, we would probably resolve the question in the negative. Section 138 of the code, however, provides that the “ court, in every stage of the action, must- disregard any error or defect which docs not affect the substantial rights of the adverse party: and no judgment shall be reversed ■or affected by reason of such error or defect.” Now, we .are all agreed that the defects in the petition, whatever they ■be, were supplied by averments in the answer and reply: .so that, upon the whole record, we find that the defects in ■the petition did not affect any substantial right of the defendant below. Thus, if the plaintiff should have averred in the petition that a regular policy had not been issued, etc., the want of such averment was supplied by an allegation to that effect in the answer, which was not denied in the reply. 'And again : if the petition was defective in not averring the performance of conditions precedent, the defect was cured by the averment in the answer, that such ■conditions (naming them) had not been performed by the plaintiff', followed by averments in the reply, that they had •been performed, or that the performance had been waived .by the defendant. 8 Ohio St. 293.
 

 II. The overruling of defendant’s motion for judgment •in its favor on the pleadings, notwithstanding the verdict is assigned for error.
 

 Several objections are made under this assignment, which will be disposed of hereafter, when we come to consider the
 
 *358
 
 alleged errors in the charge of the court, as given to the jury. In addition to what has already been said, it will suffice, in this connection, to add that the averments in the answer to the effect that the secretary of the defendant and its soliciting agent, Gunckel, had no authority from the company to make the contract sued upon, must be regarded as a denial of the averment in the petition, that “ the company agreed to make said insurance.” Where the only legal effect of matter stated in an answer is a denial of facts stated in the petition, no reply is necessary. Such an answer does not contain “allegations of new matter constituting a defense,” which must be taken as true unless denied-
 

 III. The refusal of the court to set aside the verdict and grant a new trial is also assigned for error. Under this assignment three general propositions are discussed. 1. That the verdict was not sustained by sufficient evidence; 2-That incompetent evidence- was admitted ; 3. That the-court erred in its charge to the jury.
 

 I. The following state of facts can fairly and reasonably be deduced from the testimony, all of which is set out it* the record:
 

 J. R. Young, the secretary of the defendant below (an incorporated insurance company), was authorized by the company to negotiate contracts for insurance, to sign and issue certificates like the one sued upon, to appoint agents to solicit risks, and to receive applications for policies, and to authorize such agents to deliver to applicants for policies the above-named certificates, and to collect premiums for insurance. Charles E. Gunckel was appointed such agent by the secretary, and was supplied with certificates duly signed by the secretary, with authority to countersign, fill blanks,, and to deliver the same to applicants upon the receipt of premiums.
 

 Gunckel was also agent for several other insurance companies, among which were the HUtna, the Home of New York, and the Hamilton.
 

 About the 30th of November, 1867, Gunckel, being such, agent, solicited a risk from the plaintiff, and agreed with
 
 *359
 
 him to postpone the payment of the premium for ninety days from the date of insurance; and at the same time prepared an application for a policy, which contained the usual interrogations, respecting the proposed risk. The ninth interrogatory was as follows: “Insurance — what amount is now insured on the property ? In what offices (state particularly), and on whose account?” To this in-, terrogatory there was no answer given. The fact was, however, that the plaintiff had previously obtained a policy from the Enterprise Insurance Company, for $2,000, on the same property. This application was signed by the plaintiff, and delivered to Gunckel with the understanding, that upon call by the plaintiff for insurance, Gunckel should address and forward the application to such company as he might select. On the 5th of December following, the plaintiff, by letter to Gunckel, requested insurance to the amount of $5,000. Same day, upon receipt of plaintiff’s letter, Gunckel remitted to plaintiff, a certificate signed by Secretary Young, a copy of which is set out in the petition, having first, however, erased the words, “ or should the risk not be accepted, and the above sum of money refunded to applicant, then this receipt is void, and of no effect and at same time, forwarded the plaintiff’s application to the home office of the defendant, with information that a certificate for insurance had been issued to the plaintiff'. The erasure by Gunckel was without authority from defendant. The plaintiff, however, received the certificate in good faith, and without any knowledge of the circumstances of the erasure.
 

 Upon the receipt of the plaintiff’s application at the home office of the defendant, the officers in charge procured from the German Insurance Company a policy in favor of the plaintiff for $2,000, from the Cooper Insurance Company a like policy for $2,000, and from the Central Company one for $1,000; and forwarded the same to Gunckel to be delivered to the plaintiff in lieu of their own policy for $5,000. Each of these policies contained a condition, that “ if the assured shall have or shall hereafter
 
 *360
 
 make any other insurance on the property hereby insured without the consent of this company written hereon,” then this policy shall be void. .At the time the German, Cooper and Central Companies delivered the policies to the defendant, they respectively charged the defendant with the amount of the premium thereon, and the defendant charged Gunckel with the amount of premium on the plaintiff’s risk.
 

 The printed policies of the defendant, referred to in the instrument upon which the suit was brought, contained thu following conditions:
 

 “ Provided, further, that in case the assured shall have already any other insurance against loss by fire, on the property hereby insured, not notified to this company, and mentioned in or indoi'sed upon this policy, or if the said assured, or his assigns, shall hereafter effect any insurance ■on the same property, and shall not, with all reasonable diligence, and before any loss by fire occurs, give notice thereof to this company, and have same indorsed on this policy, or otherwise acknowledged by them in writing, this policy shall cease and be of no effect.”
 

 And also a further condition, that “ no insurance shall be considered as binding until the actual payment of the premium.”
 

 On the 13th of same month, the plaintiff made application, by letter, to Gunckel, for- further insurance, on the ■same. description of property, to the amount of $10,000 ; and at same time informed him that he (plaintiff) had obtained other insurance on same property, from the agency of Landis & Son, to the amount of $13,000, including $7;000 applied for on that day. The amount of insurance thus notified.to Gunckel included also the policy for $2,000, from the Enterprise Company, which had been obtained before the execution of the instrument sued on. On the next day, December 14th, Gunckel indorsed on the policies, then in his hands, from the German, Cooper, and Central Companies, the amount of insurance in other companies, which was thus notified to him.
 

 
 *361
 
 Neither the German, the Cooper, nor the Central Com•pany assented to or was notified of any insurance on the property affected by plaintiff after the date of their respective policies..
 

 On the 18th day of same month, the property insured was destroyed by fire ; and on the next day, Gunckel, having full knowledge of the loss, delivered the German, ■Cooper, and Central policies to the plaintiff’, who, in con.sidei'ation thereof, and in the belief that they were valid and binding policies upon the companies by whom they had been issued, surrendered the instrument sued on to Gunckel to be cancelled, and at the same time executed to Gunckel his note for the amount of the insurance premium as per agreement. This note was afterward paid, and the payment accounted for by Gunckel. The loss-was notified to the companies interested, including the German, Cooper, and Central, aud proof thereof duly made. The German, Cooper, and Central companies repudiated the plaintiff’s ■claim on the ground that their policies were avoided by reason of subsequent insurance, without notice to them, and without their consent. Proof of loss was afterward, and about three months after the fire, made as against the defendant.
 

 If our view of the law governing this case (as hereinafter stated) be correct, the foregoing statement of facts is sufficient to sustain the verdict.
 

 2d. Did the court err in admitting incompetent testimony? The testimony objected to was a copy of the instrument set o.ut in the petition. Neither the instrument, .as set out in the petition, nor the copy offered in evidence, manifested the erasure, which, according to the averments ■of the answer and the admissions in the reply, bad been, made by Gunckel before it was delivered to the plaintiff’. The objection, as we understand it, is, that the paper offered in evidence, though a copy of the instrument, as set out in the petition, did not support the plaintiff’s case, as it was finally made by the pleadings.
 

 We do not perceive how the defendant was prejudiced
 
 *362
 
 by the supposed variance. The instrument, as it existed! before the alteration by Gunekel, was shown and admitted to be as set out in the petition ; nor was there any controversy as to its altered condition at the time of delivery. Hence, no proof in relation to its condition or terms, either before or after alteration,, was necessary ; nor could the in-ti’oduetion of a copy of the paper,-as it was .before or as it was after the alteration, prejudice the defendant. The-court might have ordered the petition to be amended so as-to state the contract as it was not only proved, but admitted to be, yet the failure to do so was not error for which the judgment should be disturbed.
 

 It is also claimed that the court erred in permitting' the plaintiff to prove that the policies issued by the German, Cooper, and Central Companies, were void by reason of subsequent insurance without their assent. The defendant had set up as matter of defense, that the plaintiff had released and surrendered the obligation sued on. The reply,, in substance, was, that the supposed release was made-solely in consideration of these policies; that the policies, at the time they were delivered to him, were in fact worthless and void, and therefore there was no consideration for the supposed release.
 

 The ground of objection, as stated, is, that these policies were valid on their face, and there being no allegation of fraud, and no offer to return the policies to the defendant, the plaintiff', as against the defendant in this action, should not have been permitted to show them to be worthless. We think otherwise. At the time the plaintiff surrendered the certificate, the liability of the .defendant thereon had become fixed. The loss by fire had occurred, and unless-the surrender and release were supported by a valuable consideration, the plaintiff ought not to have been bound thereby. The underwriters themselves had avoided their policies by insisting upon the condition as to notice, and assent to subsequent insurance. It was not necessary that the plaintiff should have returned or offered, to return the-policies. If they were in fact and in law worthless and
 
 *363
 
 void, as against the underwriters, the defendant sustained no injury by reason of the plaintiff’s failure to return them.
 

 Another question made in the case may as well be considered in this connection. The German, Cooper, and Central Companies avoided their policies for want of no-1 tice of and assent to subsequent insurance. Whose duty| was it to give them notice and obtain tbeir consent? The plaintiff, at that time, had no contract relation with these companies, nor had he any knowledge that these policies had been issued. He was content with the defendant’s contract for insurance. When he desired additional insurance, he notified the defendant’s agent, in whose possession these policies were. The agent consented to the insurance by indorsing it on the policies. But this did not answer the condition. The agent, we think, under the circumstances, was authorized to act for his principal, the defendant, but could not bind the underwriters. If the defendant still desired .to substitute these policies for its own undertaking, it was its duty to obtain from the German, Cooper, and Central Companies their assent to the proposed additional insurance.
 

 IY. Did the court err in its instructions to the jury ?
 

 1.
 
 The court instructed the jury, among other things, as follows :
 

 “ In regard to the issues made by the first and seventh defenses, if it was proved that the contract upon which suit was brought was signed by
 
 J.
 
 R. Young, as secretary of the defendant, and if Charles E. Gunckel was agent of the defendant, the contract would have the effect of binding the company, though not signed by the president of the-company.”
 

 The defenses referred to were based on the provisions of defendant’s charter, the ninth section of which provides as follows (49 Ohio L. 191) : “ That all policies or contracts, of insuz’anee, that may be made or entered into by said company,may be made either under or without the- seat thereof, and shall be subscribed by the president, or by such.
 
 *364
 
 .•other officer as may be designated for that purpose by the board of directors, and attested by the secretary; and being so subscribed and attested, shall be obligatory upon said company according to the tenor, intent, and meaning of this .act, and of such policies or contracts.”
 

 This charge assumed, as was averred in the answer and not denied in the reply, that the contract sued on was not ■subscribed by the president, and that the secretary had not been designated by the board of directors as an officer for the purpose of subscribing “ policies or contracts of insur•.ance,” as required by the ninth section.
 

 It must be admitted that the charter gave to the company •.all the powers that it possessed. It undoubtedly gave the power to make contracts of insurance, and the ninth section ■prescribed a form for the preservation of the evidence of its contracts, which is made obligatory on the company. If this form constitutes the- only mode by which the company can obligate itself, of course any other mode would no more create a binding contract of insurance than if the -corporation had never existed.
 

 The question therefore arises, is the form thus prescribed the only one in which the defendant can enter into a binding contract of insurance ? It will be observed that the •■ninth section does not,
 
 in toticlem
 
 verbis, confer upon the company the power to make contracts of insurance. If -there- were no express grant of such power to be found -elsewhere in the charter, I admit that it would be implied •from the provisions of this section ; and in that case, the form therein prescribed would be exclusive. But if the grant of power to contract be found elsewhere in the charter, then our inquiry will be confined to the question, whether the form prescribed in the ninth section was intended- as a limitation upon the power to contract, or merely as prescribing the manner of executing its policies.
 

 Insurance against fire was the sole object and purpose for which the defendant was incorporated. . And the first ■.section of its charter declares that it shall be capable -“generally to do and perform all. things' relative to the
 
 *365
 
 object of the association.” This grant is certainly broad, enough to confer the power to make contracts relative to-insurance — power to negotiate and agree upon all the terms and. conditions of the risk. Indeed, the very terms of the ninth section seem to imply that negotiations have-ended in a complete contract before the execution of the formal instrument is required. Having found in the first section of the charter a grant of power to contract for* insurance, we do not feel authorized to so construe the ninth section as to render null and of no effect all contracts'* made within the scope of the power there conferred, unless- and until the president or other designated officer has-subscribed the “policy or contract of insurance.” On the-other hand, we feel justified in holding that the terms, “policies or contracts of insurance,” as here used, were intended to embrace the final instruments — such as are technically called policies of insurance, and do not include intermediary contracts, of insurance, or contracts for • policies.
 

 2.
 
 The court further charged:
 

 “ That, if the jury find that Gunckel was the agent of the defendant and that he made the alteration in the receipt or contract before it was delivered to Kelly, and that he ■ did not do so by Kelly’s procurement or assent or knowledge, then the alteration does not affect the liability of the defendant, but would be liable upon what remained of the - contract.”
 

 We find no error in this instruction. The testimony shows that the secretary of the company was authorized to negotiate contracts for insurance, and also to appoint agents to solicit applications, etc. It also shows that the secretary had supplied Gunckel, as agent of the company, with these receipts or certificates, duly signed by himself, with authority to deliver them to applicants. We think the company, therefore, and not thé applicant, should bear the consequences of Gunckel’s erasure, although he was acting in violation of his duty to the company in makingit..
 

 The company held Gunckel out to the world clothed..
 
 *366
 
 with the
 
 apparent
 
 authority to bind it, by the delivery of such contracts; and that, too, with an erasure of part, such as was made in this instance.. The plaintiff was justified in believing he was authorized to do so, for he had no means of knowing but that the paper was in the precise form in which it was when issued by the secretary. The
 
 appearance ■of
 
 authority extended as well to the
 
 document erased
 
 as to the
 
 document entire.
 

 3.
 
 The court instructed the jury in relation to the condition in the contract concerning other insurance as follows :
 

 “ That, even if the jury should find that Kelly did not notify Gunckel of the insurance in the Enterprise Company •of November 27th, 1867, on or before the 5th day of December, a. D., 1867, yet if he wrote to Gunckel on the 13th December, informing him of all the insurance, and Gunckel was the agent of the defendant, that such notice, if received before the loss, would be a good compliance upon the part of Kelly, with his obligation to- give notice to the company of all other insurance, and that it would be sufficient as to the Enterprise insurance, and sufficient .as to the $7,000 applied for on that day to Landis & Son, although such $7,000 was not issued until the 14th of December.
 

 “ That it was not necessary that any indorsement of either prior or subsequent insurance should be made upon the ■contract sued upon or recited in the same.”
 

 If, under the contract, the plaintiff was required to give notice of
 
 prior insurance,
 
 we doubt whether this instruction, in so far as it relates to that subject, could be sustained. The contract was for insurance according to the -“ tenor and conditions of the printed policies ” of the defendant. The conditions, in relation to other insurance contained in the printed policy, were as follows:
 

 “ Provided, further, that in case the assured shall have already any other insurance against loss by fire, on the property hereby insured, not notified to this company, and mentioned in or indorsed upon this policy, or if the said
 
 *367
 
 •assured, or his assigns, shall hereafter effect any insurance on the same property, and shall not, with all reasonable •diligence, and before any loss by fire occurs, give notice thereof to this company, and have same indorsed- on this policy, or otherwise acknowledged by them in writing, this policy shall cease and be of no effect.”
 

 A fair and reasonable construction of this contract would require notice of prior insurance to be given at the time of making applicationfor insurance. The object of notice is to enable the insurer to act prudently and intelligently in relation to the risk ; yet, notwithstanding the reference to the condition in the printed policy, it was competent for the defendant to waive the condition, and we think it was waived, in so far as it related to the notice of prior insurance. The risk was taken upon an application which formed part of the contract. The interrogatory in the application for insurance, in relation to prior insurance, was not answered. The acceptance of the risk upon such an application is a waiver of any notice which a truthful answer to the interrogatory would have disclosed. 21 Ohio St. 176; 6 Gray, 85.
 

 As to notice of subsequent insurance, the charge of the court was right. Notice to Gunekel was notice to the defendant. We are not prepared to say that the notice to Gunekel would have been sufficient, if he had been the agent of the defendant merely for the purpose of soliciting applications and collecting premiums. Confessedly his authority in relation to this risk was much more extensive. He was, in fact, intrusted with the German, Cooper, and Central policies, for the purpose of delivering them, in lieu of the defendant’s own policy, and lifting the instrument sued on. Had he been intrusted with a policy of the defendant, for delivery, in performance of the contract, there can be no doubt that notice to him and indorsement by him of subsequent insurance thereon would have bound the company. He, in fact, indorsed the subsequent insurance upon the policies in his possession, and, in our opinion, ho
 
 *368
 
 thereby assented, as the agent of defendant, to all the subsequent insurance of which he had notice.
 

 We also think the court below was right in charging the-jury “ that it was not necessary that any indorsement of either prior or subsequent insurance should be made upon the contract sued upon, or recited in the same.” The parties contemplated and contracted fora “ regular policy,”' hut the instrument sued on is not such policy. We understand, as did the court below, that the meauing of the-parties -was, that prior, as well as subsequent insurance, should be mentioned in or indorsed upon the regular policy, when or after it should be issued. Such recitals or indorsements would be a full compliance with the contract' in this respect. No such policy having been issued, there was no failure to comply with this condition.
 

 The court also instructed the jury:
 

 “ That, if the company charged the amount of the-premium to\ Gunckel, and Gunckel received the note of Nelly for the same, which was subsequently paid, that' was a good and sufficient compliance with the contract' upon Nelly’s part, and the contract is binding, although said note was not given until after the fire.”
 

 The facts assumed in this charge, in connection with the-fact admitted in the defendant’s answer, viz., that Gunckel was the agent of the company, “ to solicit applications and to collect premiums, when insurance was affected,” amount to a waiver of the condition in their “ printed policies “ that no insurance, whether original or continued, shall he considered as binding until the actual payment of the-premium.” It is very doubtful whether such condition, in-the policy contracted for, attaches to a contract for intermediary insurance (10 Bosw. 83); but whether it does or not, the charging of the premium to such agent, and the agent’s agreement to give time ‘for its payment, and the subsequent payment to the company constitute a waiver o£ pre-payment.
 
 Judgment affirmed.
 

 Bay, C. J., White, and Rex, J.J., concurring. Welch, J.,, not sitting.